1    IN THE UNITED STATES DISTRICT COURT

2

3    FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5    MICHELLE BARBER,                      No. C 08-4883 CW

6            Plaintiff,                    ORDER GRANTING IN
                                           PART AND DENYING IN
7        v.                                PART DEFENDANTS'
                                           MOTION FOR SUMMARY
8    CITY OF CRESCENT CITY, DOUGLAS PLACK  JUDGMENT
     and ERIC CAPON,                       (Docket No. 50)
9
             Defendants.
10   _____/

11        Plaintiff Michelle Barber brings claims for unlawful sex

12   discrimination, harassment and retaliation against Defendants City

13   of Crescent City, Douglas Plack and Eric Capon.  Defendants move

14   for summary judgment on Plaintiff's claims.  Plaintiff opposes the

15   motion.  Defendants object to evidence submitted by Plaintiff in

16   support of her opposition.[1]  The motion was heard on July 1, 2010.

17   Having considered oral argument and the papers submitted by the

18   parties, the Court GRANTS in part Defendants' Motion for Summary

19   Judgment and DENIES it in part.

20                          BACKGROUND

21        Plaintiff has been a police officer for the City since May 21,

22   2000.  Until 2006, she was the City's only female police officer.

23   Defendant Plack is the City's chief of police, and Defendant Capon

24   _____

25        [1] The parties failed to comply fully with the Court's orders
     on summary judgment briefing.  Contrary to the Court's Order of
26   June 11, 2010, Plaintiff filed her opposition brief on June 14,
     2010.  In violation of the Court's standing order, Defendants filed
27   their objections to Plaintiff's evidence in a forty-one page brief
     separate from their reply.  The parties are admonished to follow
28   the Court's standing orders and the Court rules.

1  is an officer with the department.

2      Plaintiff claims that several incidents involving Plack,

3  occurring between 2004 and 2006, created a hostile work

4  environment.  In August, 2004, Plack told Plaintiff that she needed

5  to "out-perform the other officers," all of whom were male.  Barber

6  Decl. ¶ 26.  From 2004 through 2006, Plack made critical remarks

7  about Plaintiff's long-term relationship with a man, stating that

8  he was "too old" and "no good" for her and that she "should not be

9  with him."  Barber Decl. ¶ 31.  From 2005 through 2006, Plack

10  commented on Plaintiff's loss of weight and took "actions of a

11  sexual nature."  Barber Decl. ¶ 39.  In 2006, Plack asked

12  Plaintiff, "God, where have you been all my life?" and, on another

13  occasion, grabbed Plaintiff's belt, pulled it up and down and told

14  her that her pants were too big for her.  Barber Decl. ¶¶ 40 and

15  41.  Also, on an unspecified date, Plaintiff heard Plack ask

16  another employee, who had received roses from her boyfriend, what

17  she "'had to do to get the roses.'"  Barber Decl. ¶ 44.  On another

18  unspecified date, Plack was observed to have demeaned and

19  humiliated Robin Patch, a female clerk in the office.  Burke Decl.

20  ¶ 8.  Plaintiff asserts that the alleged incidents of

21  discrimination discussed below also contributed to a hostile

22  environment.

23      In October, 2006, Plaintiff and Defendant Capon applied for a

24  motorcycle officer position within the police department.  At that

25  time, Plaintiff had a motorcycle endorsement on her driver's

26  license; Capon did not.  The City convened a panel, comprised of

27  Rich Enea, Sergeant Stonebreaker of the California Highway Patrol

28  and Gary Witmer of the Eureka Police Department, to make a

United States District Court
For the Northern District of California

recommendation to Plack.  The panel's recommendation is not disclosed in the record.  Plack claims that Capon was selected because he had a higher exam score than Plaintiff.  However, Defendants do not reveal Capon's and Plaintiff's scores on the exam.

On February 16, 2007, the City announced an opening for a police sergeant position.  Beforehand, Plack had encouraged Plaintiff's husband, Robert Barber, to apply for the position and stated that he would be selected if he did so.  Mr. Barber responded that Plaintiff was more qualified than he for the position.

On March 29, 2007, Plaintiff notified Plack of her intent to apply for the sergeant position.  On April 6, 2007, Plack met with Plaintiff and informed her that she was under two investigations, which placed her in "bad standing" and disqualified her from applying.  The first investigation involved a complaint filed on March 24, 2007 by Michael Amos, a City resident who alleged that Plaintiff acted unlawfully toward him on February 4, 2007.  The second involved Plaintiff's alleged failure to include all relevant facts in a police report concerning a December, 2006 incident involving Ronald Fudger.  Mr. Barber asserts that, at the time the job opening was announced, Plack indicated that the exam for the position would take place in September, 2007.  Plack, according to Mr. Barber, subsequently rescheduled it for June, 2007, which prevented Plaintiff from taking the test.  Only Capon and Officer Doyle, another male police officer for the City, applied for the position.  Plack ultimately selected Capon.

In April, 2007, sometime after her April 6 meeting with Plack,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Plaintiff took medical leave.  On September 20, 2007, Plaintiff's physician cleared her to return to work and, that same day, she attempted to resume her duties.  She was told, however, that she could not do so until Plack returned from vacation.

In a letter dated September 20, 2007 and sent to Laura Haban, who worked in the City's human resources department, Plaintiff complained about Plack.  She wrote that she intended to file claims for discrimination and retaliation against the City based on Plack's "inappropriate, discriminatory and retaliatory" practices.  Jacob Decl., Barber Depo., Ex 1.  On September 27, 2007, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and the California Department of Fair Employment and Housing (DFEH), alleging sex discrimination.  The City received notice of the charge in early October.  Plaintiff received a right-to-sue letter from the DFEH on or around October 2, 2007 and one from the EEOC on July 28, 2008.

Around the second week of October, 2007, Plaintiff went back to work.  Upon her return, she learned that Plack had disenrolled her from a training course on interviewing and interrogation, for which she had been registered in March, 2007.  Plack states that, at some unspecified time during the intervening summer, he substituted a male officer for Plaintiff on the class roster because he did not know when she would return from medical leave and he wanted to ensure that "the department would have someone attend the training."  Plack Decl. ¶ 11.

Also in October, 2007, Plaintiff was offered the motorcycle officer position, which had been vacated by Capon after his promotion to sergeant.  Upon taking the job, Plaintiff asked Plack

4

to afford her the same privileges given to Capon when he took the position.  According to Plaintiff, Plack did not do so.  Although Capon was provided appropriately-sized clothing and gear, Plaintiff was given Capon's equipment, which was too large for her, so she had to use her own equipment.  In addition, even though Plaintiff had already succeeded him, Capon retained possession of the police department's motorcycle and did not relinquish it to Plaintiff.  On two occasions, Plaintiff sought assistance from Plack, who rebuffed her requests.  On November 15, 2007, Plaintiff asked Plack to allow her to take a March, 2008 motorcycle training course, instead of the January, 2008 session to which she was assigned, to give her more time to become familiar with the City's motorcycle.  Plack refused.  Plaintiff subsequently failed the training course.

On March 12, 2008, Plaintiff filed a second charge with the EEOC and the DFEH, alleging retaliation based on her earlier charge.  The City received notice of this charge on April 2, 2008.  According to Plaintiff, she received a right-to-sue letter on this charge on July 28, 2008.

In July, 2008, while on vacation, Plaintiff participated in the surveillance of gang activity at the Hollister Motorcycle Rally.  She states that, prior to leaving for vacation, she verbally informed Capon, her direct supervisor at that time, of her intent to volunteer at the event.  On June 29, 2008, at Haban's suggestion, Plaintiff sent a memo to City Manager Mike Young and Plack, notifying them of her planned participation in the event.  She placed a copy of the memo in Capon's mailbox at the police station.  In a memo dated July 6, 2008, Capon chided Plaintiff for "bypassing all command" within the police department by notifying

5

**United States District Court**
For the Northern District of California

Young of her intent to attend the event, before contacting either him or Plack.  Capon also warned Plaintiff that her surveillance activity was "viewed as a conflict of interest" and that she was not authorized to represent herself as a Crescent City police officer at the event.  Barber Decl., Ex. 17.  Plaintiff claims that she did not receive a copy of this letter until after returning from Hollister.

In a July 18, 2008 memorandum, Plack notified Plaintiff that he intended to issue a written reprimand concerning her surveillance at Hollister.  In particular, the memorandum stated that Plaintiff violated the department's policies by failing to follow the chain of command and creating a conflict of interest with her employment.  In an August 22, 2008 memorandum, Plack stated that he would not issue a formal written reprimand, but admonished Plaintiff to follow the chain of command in the future. He stated that Plaintiff circumvented the chain of command because her memo "should have first been submitted to Sergeant Capon and followed through with the chain of command."  Barber Decl., Ex. 21 at 341.  He further asserted that Plaintiff did not afford either him or Capon sufficient time to respond to her memo.  Id.  The purported violation for a conflict of interest was "not sustained." Id. at 342.

In January, 2009, a sergeant position became available. Plaintiff applied in March, 2009 and was informed by Haban that she qualified to take the examination for the position.  After the application period closed at the end of March, Plaintiff received no information about when testing would be held.  She subsequently learned that another sergeant position had opened up, recruitment

United States District Court
For the Northern District of California

would be open to outside agencies and the eligibility requirement concerning years of service would be lowered from five to four years.  Plack decided to enlarge the recruitment pool because "Barber was the only applicant and we needed more than one applicant to fill the two open positions."  Plack Decl. ¶ 14.  One of the sergeant positions was filled by a male, and the other has been left open because of a hiring freeze.  Plaintiff remains a candidate for the open sergeant position.

Finally, Plaintiff complains about Plack's ongoing refusal to appoint her as a field training officer (FTO).  FTOs train new officers in the department and, for the additional responsibility, receive a pay increase of five percent.  Plack sent Plaintiff to attend training in 2006, and she is qualified to serve as an FTO.  Plaintiff served as an FTO sometime in late 2006 or early 2007, but Plack removed her from the position because, after receiving a personal phone call, she "became extremely upset emotionally" in front of a new officer.  Plack Decl. ¶ 15.  Since then, Plack has not assigned Plaintiff as an FTO because her conduct concerning the phone call "fell below the professional standards of conduct in the police department," her "attendance has not been consistent since 2007" and she encourages "members of the department to leave the department," which clashes with Plack's expectation that FTOs project a "positive image of the department . . . and maintain morale among peace officers in the department."  Id.

Plaintiff initiated this lawsuit on October 24, 2008.  She filed an amended complaint on December 31, 2008, which the Court dismissed with leave to amend on March 17, 2009.  On March 31, 2009, Plaintiff filed the operative complaint, which contains five

7

claims: (1) a Title VII claim against the City for "sexual discrimination, harassment and hostile environment;" (2) a Title VII claim against the City for retaliation; (3) a claim under the California Fair Employment and Housing Act (FEHA) against the City for "sexual discrimination, harassment and retaliation;" (4) a claim under 42 U.S.C. § 1983 against all Defendants for violating her Fourteenth Amendment right to equal protection by discriminating against her and harassing her on the basis of her sex; and (5) a claim under § 1983 against Plack and Capon for violating her Fourteenth Amendment right to equal protection and due process by retaliating against her.  The complaint also pleads that, on March 30, 2009, Plaintiff filed a third charge of discrimination with the DFEH, alleging continuing discrimination, harassment and a hostile work environment, and retaliation for protected activity.  She asserts that she received a right-to-sue letter for this charge on the same day.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815

F.2d at 1289.   The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.   The substantive law will identify which facts are material.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.   Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).   If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to

United States District Court
For the Northern District of California

produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. <u>Nissan</u>, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. <u>Id.</u>

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. <u>Id.</u> This is true even though the non-moving party bears the ultimate burden of persuasion at trial. <u>Id.</u> at 1107.

DISCUSSION

I.   Sex Discrimination Claims

A.   Applicable Law

In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), and <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981), the Supreme Court established a burden-shifting framework for evaluating the sufficiency of a plaintiff's evidence in employment discrimination suits. The same burden-shifting framework is used when analyzing claims under FEHA and § 1983. <u>Bradley v. Harcourt, Brace & Co.</u>, 104 F.3d 267, 270 (9th Cir. 1996) (FEHA); <u>Anthoine v. N. Cent. Counties Consortium</u>, 605 F.3d 740, 753

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(9th Cir. 2010) (§ 1983).[2]  Within this framework, plaintiffs may establish a prima facie case of discrimination by reference to circumstantial evidence; to do so, plaintiffs must show that they are members of a protected class; that they were qualified for the position they held or sought; that they were subjected to an adverse employment decision; and that they were replaced by someone who was not a member of the protected class or that the circumstances of the decision otherwise raised an inference of discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (citing McDonnell Douglas and Burdine).  Once plaintiffs establish a prima facie case, a presumption of discriminatory intent arises.  Id.  To overcome this presumption, defendants must come forward with a legitimate, non-discriminatory reason for the employment decision.  Id. at 506-07.  If defendants provide that explanation, the presumption disappears and plaintiffs must satisfy their ultimate burden of persuasion that defendants acted with discriminatory intent.  Id. at 510-11.

To survive summary judgment, plaintiffs must then introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason the employer articulated is a pretext for discrimination.  Plaintiffs may rely on the same evidence used to establish a prima facie case or put forth additional evidence.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000);

---

   [2] In Anthoine, the Ninth Circuit applied the McDonnell-Douglas framework to the plaintiff's § 1983 employment discrimination claim but noted that courts are not bound to follow the McDonnell-Douglas framework in assessing such claims.  605 F.3d at 753 (citing Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 754 (9th Cir. 2001)).  The Court applies the McDonnell-Douglas analysis here because the parties have not proffered an alternative.

11

Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994).
However, "in those cases where the prima facie case consists of no
more than the minimum necessary to create a presumption of
discrimination under McDonnell Douglas, plaintiff has failed to
raise a triable issue of fact." Wallis, 26 F.3d at 890.

Plaintiffs can provide additional evidence of "pretext
(1) indirectly, by showing that the employer's proffered
explanation is unworthy of credence because it is internally
inconsistent or otherwise not believable, or (2) directly, by
showing that unlawful discrimination more likely motivated the
employer." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d
1185, 1194 (9th Cir. 2003) (citation and internal quotation marks
omitted). When plaintiffs present indirect evidence that the
proffered explanation is a pretext for discrimination, "'that
evidence must be specific and substantial to defeat the employer's
motion for summary judgment.'" EEOC v. Boeing Co., 577 F.3d 1044,
1049 (9th Cir. 2009) (quoting Coghlan v. Am. Seafoods Co. LLC, 413
F.3d 1090, 1095 (9th Cir. 2005)). When plaintiffs proffer direct
evidence that the defendant's explanation is a pretext for
discrimination, "very little evidence" is required to avoid summary
judgment. Boeing, 577 F.3d at 1049.

The Ninth Circuit has instructed that district courts must be
cautious in granting summary judgment for employers on
discrimination claims. See Lam v. Univ. of Hawai'i, 40 F.3d 1551,
1564 (9th Cir. 1994).

B.   Analysis

Defendants contend that they are entitled to summary judgment
on Plaintiff's sex discrimination claims under Title VII, FEHA and

United States District Court
For the Northern District of California

§ 1983 on two grounds: (1) Plaintiff cannot make out a prima facie case because she fails to produce evidence supporting an inference of discriminatory motive and (2) even if she did, she does not create a triable issue on pretext. Defendants apparently concede that Plaintiff is in a protected class, that she was qualified for the positions she held or sought and that adverse employment actions were taken against her.

    1.   Plack

Although Plaintiff complains of several incidents involving Plack, she does not identify which ones constitute adverse employment actions for which she claims liability. Based on Defendants' motion and Plaintiff's opposition, it appears that there are seven: (1) the failure to promote Plaintiff to the motorcycle officer position in October, 2006; (2) her "bad standing" designation based on the Amos and Fudger incidents, leading to her disqualification for the sergeant position in 2007; (3) her removal from a training course in October, 2007; (4) the failure to provide her with adequate equipment and an opportunity to train after she became a motorcycle officer in October, 2007; (5) her write-up for the Hollister event; (6) the expansion of the applicant pool, which resulted in the failure to promote her to sergeant in 2009; and (7) the failure to assign her as an FTO. An adverse employment action is one that "'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1126 (9th Cir. 2000)) (alteration in original). Defendants do not argue that any of these actions fall outside this definition.

United States District Court
For the Northern District of California

1    Defendants do not dispute that Plack was the ultimate

2  decision-maker with respect to these actions.  Thus, with regard to

3  Plaintiff's prima facie case, the relevant inquiry is whether there

4  are any circumstances that can give rise to an inference that Plack

5  acted with discriminatory intent.

6    Thomas Burke, who worked as a sergeant for the police

7  department under Plack, identifies several discriminatory,

8  demeaning or derogatory comments Plack made about women.  In the

9  context of hiring two female candidates for open police officer

10 positions in 2006, Plack remarked to Burke that "he could not stand

11 the idea of having two more women on the Police Force who would

12 have the same 'monthly' difficulties as Officer Barber."  Burke

13 Decl. ¶ 5.  Burke also states that, each time Plack raised concerns

14 about Plaintiff, Plack attributed them to "the fact that she was a

15 woman."  Burke Decl. ¶ 4.  Burke also witnessed the exchange

16 between Plack and a female employee who had received roses, when

17 Plack asked what she "had to do" to deserve roses.  Burke Decl.

18 ¶ 6; Barber Decl. ¶ 44.  Even though not all of these comments were

19 directed at Plaintiff or related to the actions taken against her,

20 when considered along with Plack's actions toward her, they support

21 an inference of discriminatory animus.  Boeing, 577 F.3d at 1050.

22 "Where a decisionmaker makes a discriminatory remark against a

23 member of the plaintiff's class, a reasonable factfinder may

24 conclude that discriminatory animus played a role in the challenged

25 decision."  Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027,

26 1038 (9th Cir. 2005).  Thus, Plaintiff makes out her prima facie

27 case against Plack.

28    Plack provides legitimate, non-discriminatory bases to support

14

United States District Court
For the Northern District of California

his decisions, except for those concerning the failure to provide Plaintiff with adequate equipment for and time to train on the City's motorcycle.  For those actions for which Plack articulates a basis, Plaintiff must create a triable issue on whether the proffered reasons are mere pretext.  Direct evidence suggesting Plack harbored discriminatory animus satisfies this burden.  In Boeing, the Ninth Circuit held that the EEOC could prove that Boeing's proffered non-discriminatory reasons were pretextual based on the same evidence of discriminatory animus used to make out its prima facie case.  The court stated,

> The discriminatory animus exhibited by Castron's supervisor constitutes direct evidence of pretext, even though the comments did not refer specifically to Castron.  Based on Charlton's sexist comments, a jury might reasonably infer that Charlton's decision to transfer Castron, rather than a male coworker about whom she complained, to a new position where her job was less secure, may have resulted from improper motivations, including discriminatory intent, retaliatory intent, or both.

Boeing, 577 F.3d at 1050.  As noted above, very little direct evidence of pretext is required to avoid summary judgment.  Id. at 1049 (quoting Lam, 40 F.3d at 1564).

In addition to direct evidence, Plaintiff offers specific and substantial circumstantial evidence from which a jury could infer that some of Plack's reasons were pretextual.  Concerning the motorcycle position, Plack asserts that he chose Capon because he had a higher examination score than Plaintiff.  However, Plaintiff states that, at the time of testing, she had a motorcycle endorsement on her driver's license, whereas Capon told her that he did not.  This supports an inference that Capon did not have experience with riding a motorcycle on public streets and highways.

15

See Cal. Vehicle Code § 12500(b).  As a result, Plaintiff may have been more qualified.  Notably, Defendants do not proffer Capon's and Plaintiff's scores on the exam, nor do they disclose the recommendation of the panel convened by the City.

With regard to his decision to place Plaintiff in "bad standing," which disqualified her from applying for the sergeant position, Plack states that she was under investigation for the Amos and Fudger incidents.  However, Mr. Barber asserts that, when the sergeant position was announced, Plack stated that the exam would take place in September, 2007.  Plack then advanced the test to June, 2007, which precluded Plaintiff from testing because of her "bad standing" designation.  Plaintiff and Mr. Barber contend that she would have been eligible to take the exam had the date remained set for September.  Plack knew as early as January, 2007, after he spoke with Mr. Barber, that Plaintiff might apply for the position.  Based on the rescheduling of the exam date and the timing of the Amos and Fudger investigations, a reasonable jury could infer that the proffered reasons were pretext for unlawful discrimination.  Plaintiff was the only woman at the police department who qualified to apply for the position and, ultimately, Capon was selected for the position, which further supports an inference of discrimination.

Plack asserts that he removed Plaintiff from a training course, scheduled for November, 2007, sometime during the preceding summer because he did not know when she would return from medical leave.  However, Plaintiff was replaced with a male officer and she provides evidence that, in 2007, male officers received

**United States District Court**
For the Northern District of California

significantly more hours of training than female officers.[3]
Furthermore, the cancellation policy for the course required two-
weeks notice to avoid being charged the full tuition fee, which
undercuts Plack's assertion that it was necessary to disenroll
Plaintiff over the summer.  If all inferences are taken in
Plaintiff's favor, a jury could conclude that Plack's proffered
basis was a pretext for sex-based discrimination.

As for the Hollister event, Plack asserts that action was
taken against Plaintiff because she represented herself "as a peace
officer of the department without getting prior approval to attend
the event" and failed "to follow department procedures relating to
outside employment."  Plack Decl. ¶ 13.  As noted above, Plack
complained that Plaintiff bypassed the chain of command by not
first submitting her letter to Capon and not affording him and
Capon sufficient time to respond.  However, Plaintiff states that,
around the first week of June, 2008, she informed Capon, who was
her supervisor at the time, of her intent to participate in the
Hollister event.  She claims that, at that time, Capon approved of
her attendance.  She asserts that she also informed Plack, through
a letter placed in his work mailbox, on June 29, 2008.  A jury
could credit Plaintiff's testimony, which contradicts Plack's
assertion that she failed to obtain prior approval and that she
circumvented the chain of command.

Concerning Plaintiff's March, 2009 application for the

---

[3] Plaintiff, who was on leave between April and September,
received fourteen hours of training in 2007; the other two female
officers received twelve hours each.  That year, the male officer
with the least number of hours received sixty-eight hours of
training.

17

United States District Court
For the Northern District of California

sergeant position, Plack contends that he had to expand the applicant pool, through recruiting outside the agency and lowering the years-of-service requirement, because two sergeant positions opened up.  He explains that "Barber was the only applicant and we needed more than one applicant to fill the two open positions." Plack Decl. ¶ 14.  However, only one person was hired, a male. Plack states that Plaintiff remains "in the running" for the remaining position, but that a hiring freeze prohibits him from taking any further action.  Id.  Plaintiff asserts, however, that she never received any notice of a second position becoming available.  Such an absence of notice can create a genuine issue as to whether the reasons given were pretextual.  Cf. McGinest v. GTE Svc. Corp., 360 F.3d 1103, 1123 (9th Cir. 2004) (stating that "the absence of any documentation confirming that a company hiring freeze was in place during the relevant time period is sufficient to raise a genuine factual dispute as to whether the asserted reason was pretextual").  Moreover, that Plack expanded the scope of recruitment only after determining that Plaintiff was the sole qualified candidate for the position also supports an inference of pretext.

Plaintiff, however, does not offer specific and substantial evidence to refute all of Plack's reasons for not assigning her as an FTO.  Plack proffers three bases: (1) Plaintiff's unprofessional conduct in front of a new officer after receiving a personal telephone call, (2) her inconsistent attendance and (3) her disparaging remarks about the department.  She creates a triable issue on whether she made disparaging remarks.  But, with regard to Plack's first reason, Plaintiff only offers inadmissible hearsay

evidence that the officer was unfazed by her reaction, which the Court cannot credit.  Even if she had competent testimony, the officer's lack of a negative response does not contradict Plack's assertion that she was unprofessional.  As for her inconsistent attendance, Plaintiff does not dispute that she was on leave for several months between 2007 and 2010, but asserts that much of that leave was attributable to a hip injury she sustained in 2004.  This assertion does not create a triable issue on whether Plack's reason was false.  Nevertheless, even though Plaintiff fails to create a triable issue through indirect evidence, as explained above, she may pursue liability for Plack's failure to assign her as an FTO based on direct evidence of his discriminatory animus.

Thus, Plaintiff makes out a prima facie case and offers direct and indirect evidence to support inferences that Plack's non-discriminatory reasons were pretextual.  Accordingly, summary judgment is not warranted on Plaintiff's discrimination claims under Title VII and FEHA against the City or on that under § 1983 against Plack.

2.   Capon

Plaintiff's discrimination claims involving Capon appear to concern his involvement in the disciplinary action arising from the Hollister event.  She claims that Capon "aided and abetted and/or co-conspired" with Plack, but any evidence of this supposed conspiracy is irrelevant to creating an inference of sex-based animus.  Moreover, Plaintiff fails to offer evidence that such a conspiracy even existed.

Because Plaintiff offers no direct or circumstantial evidence that Capon harbored a discriminatory motive, she fails to make out

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

a prima facie case against him.  Accordingly, the Court grants

summary judgment against Plaintiff on her § 1983 claim for sex-

based discrimination against Capon and on her Title VII and FEHA

discrimination claims against the City, to the extent they rest on

actions taken by Capon.

II.   Harassment and Hostile Work Environment Claims

California courts apply federal decisions interpreting Title

VII to analyze FEHA sexual harassment claims.  Lyle v. Warner Bros.

Television Prods., 38 Cal. 4th 264, 278-79 (2006).  A plaintiff may

prove sexual harassment by demonstrating that an employer has

created a hostile or abusive work environment.  Meritor Sav. Bank

v. Vinson, 477 U.S. 57, 65-67 (1986).  To prevail on a hostile

workplace claim premised on sex, a plaintiff must show:  (1) that

he or she was subjected to verbal or physical conduct of a sexual

nature; (2) that the conduct was unwelcome; and (3) that the

conduct was sufficiently severe or pervasive to alter the

conditions of the plaintiff's employment and create an abusive work

environment.  Vasquez v. County of L.A., 349 F.3d 634, 642 (9th

Cir. 2003).  A plaintiff must show that the work environment was

abusive from both a subjective and an objective point of view.

Dominguez-Curry, 424 F.3d at 1034.  Whether the workplace is

objectively hostile must be determined from the perspective of a

reasonable person with the same fundamental characteristics as the

plaintiff.  Id.  Although the "mere utterance of an . . . epithet

which engenders offensive feelings in an employee" does not alter

the employee's terms and conditions of employment sufficiently to

create a hostile work environment, "when the workplace is permeated

with 'discriminatory intimidation, ridicule, and insult,'" such an

environment exists.  Meritor, 477 U.S. at 65, 67.  Neither "simple

teasing," "offhand comments," nor "isolated incidents" alone

constitute a hostile work environment.  Faragher v. City of Boca

Raton, 524 U.S. 775, 788 (1998).  "An employer is strictly liable

for harassment committed by its agents or supervisors . . . ."

Jones v. Dep't of Corr. & Rehab., 152 Cal. App. 4th 1367, 1377

(2007).

A.   Plack

Plaintiff provides evidence that she personally experienced,

witnessed and knew of allegedly harassing actions taken by Plack.

Plaintiff testified that Burke told her that Plack referred to two

new female officers as "'once a months.'"  Goldman Decl., Barber

Depo. at 184:19-185:2.  She also recounted Plack's comments to her

about her appearance and the instance when he grabbed her belt and

pulled it up and down to demonstrate that her pants were loose-

fitting.  Burke also observed instances with Robin Patch, during

which Plack was demeaning and humiliating; Plaintiff states that

she was aware of one of these events.  Plaintiff also recounts

Plack's question to a female clerk about what she "had to do" to

have her boyfriend send roses.  Plack provides no evidence that he

treated men in a similar fashion.  Considered along with

Plaintiff's evidence of the adverse actions taken against her, this

evidence could lead a reasonable jury to infer that Plack sexually

harassed female employees in the workplace, which created a hostile

environment.

Citing Beyda v. City of Los Angeles, 65 Cal. App. 4th 511

(1998), Defendants argue that Plack cannot be liable for all of his

conduct because some events were not in Plaintiff's presence.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

Defendants misread <u>Beyda</u>, which explicitly stated, "We . . .
believe that a reasonable person may be affected by knowledge that
other workers are being sexually harassed in the workplace, <u>even if</u>
<u>he or she does not personally witness that conduct</u>."  65 Cal. App.
4th at 519 (emphasis added).  The court reasoned,

> To the degree that [<u>Fisher v. San Pedro Peninsula Hosp.</u>,
> 214 Cal. App. 3d 590 (1989)] may be understood to require
> that a plaintiff personally witness any act relied upon
> to prove hostile environment, we respectfully disagree.
>
> As we have explained, personal observation is not the
> only way that a person can perceive, and be affected by,
> harassing conduct in the workplace.  One can also be
> affected by knowledge of that harassment.  In reaching
> this conclusion, we caution that mere workplace gossip is
> not a substitute for proof.  Evidence of harassment of
> others, and of a plaintiff's awareness of that
> harassment, is subject to the limitations of the hearsay
> rule.  It is not a substitute for direct testimony by the
> victims of those acts, or by witnesses to those acts.

<u>Beyda</u>, 65 Cal. App. 4th at 519-20.  Subsequent state cases have
relied on <u>Beyda</u> for this principle.  <u>See, e.g.</u>, <u>Hope v. Cal. Youth</u>
<u>Authority</u>, 134 Cal. App. 4th 577, 590 (2005).  Federal courts
applying Title VII likewise state that harassing conduct outside
the presence of a plaintiff is probative of a hostile work
environment claim, so long as the plaintiff has knowledge of the
incidents.  <u>See, e.g.</u>, <u>Barrett v. Whirlpool Corp.</u>, 556 F.3d 502,
515 (6th Cir. 2009);  <u>Hurley v. Atl. City Police Dep't</u>, 174 F.3d
95, 110-12 (3d Cir. 1999); <u>Hicks v. Gates Rubber Co.</u>, 833 F.2d
1406, 1416 (10th Cir. 1987).  Here, Plaintiff was aware of the
workplace incidents that took place outside of her presence and she
presents non-hearsay evidence that they occurred.  Thus, Plack's
conduct directed to other employees can support her claim that she
was exposed to a hostile environment.

　　　Defendants also argue that there is no evidence that Plack's

conduct was sufficiently severe or pervasive.  They rely primarily on <u>Kortan v. California Youth Authority</u>, 217 F.3d 1104, 1111 (9th Cir. 2000).  However, the conduct at issue there, although offensive, "was concentrated on one occasion" and in "the wake of a dispute about a nurse's failure to follow instructions."  <u>Id.</u> Here, Plack's conduct is not so isolated, nor are there any circumstances to suggest that his actions were motivated by reasons other than the employees' sex.

Consequently, summary judgment is not warranted on Plaintiff's harassment and hostile environment claims under Title VII and FEHA against the City and under § 1983 against Plack.

B.    Capon

As to Capon, Plaintiff only complains of his conduct related to the Hollister event.  However, as explained above, she fails to provide any evidence that Capon harbored any discriminatory animus or took action on the basis of her sex.  Even if she did, his involvement in the action taken against her for the Hollister event would not be sufficiently severe or pervasive to support a claim that he created a hostile work environment.  Accordingly, the Court grants summary judgment in favor of Capon on Plaintiff's § 1983 claim for harassment and her Title VII and FEHA harassment claims against the City, to the extent they rest on actions taken by Capon.

III. Retaliation Claims

Plaintiff brings retaliation claims under Title VII, FEHA and § 1983.  For her § 1983 claim, she asserts that Plack and Capon retaliated against her in violation of her equal protection and due process rights.  However, this does not appear to be a legally

United States District Court
For the Northern District of California

cognizable claim; generally, a retaliation claim under § 1983 is brought for the violation of a plaintiff's First Amendment rights. Plaintiff does not identify authority to support the existence of the § 1983 retaliation claim she pleads.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1983 claim for retaliation.

Claims for retaliation under Title VII and FEHA are analyzed under the McDonnell-Douglas framework outlined above.  Lam, 40 F.3d at 1559 n.11; Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).  To establish a prima facie case for retaliation, a plaintiff must "show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  Yanowitz, 36 Cal. 4th at 1042; accord Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731 (9th Cir. 1986).

Plaintiff contends that she engaged in protected activities by sending her September 20, 2007 letter to Haban, filing charges with the EEOC and the DFEH on September 27, 2007 and March 12, 2008, and filing her DFEH charge on March 30, 2009.  As with her claims for discrimination, Plaintiff does not enumerate clearly the adverse employment actions she attributes to unlawful retaliation. However, because she first engaged in protected activity on September 20, 2007, only those actions that transpired after this date could be considered retaliatory.  Thus, Plaintiff's retaliation claims are read to encompass (1) her removal from a training course in October, 2007; (2) the failure to provide her with adequate equipment and an opportunity to prepare for her

24

United States District Court
For the Northern District of California

motorcycle training course in November and December, 2007; (3) her write-up for the Hollister event in July, 2008; (4) the expansion of the applicant pool, which led to the failure to promote her to sergeant in 2009; and (5) the ongoing failure to assign her as an FTO.  As noted above, Plaintiff's claims concerning Capon appear to rest solely on her complaints about the actions arising from the Hollister event.

Defendants appear to concede that Plaintiff satisfies the first and second elements of her prima facie case.  They argue, however, that summary judgment is warranted because Plaintiff does not establish a causal link between her protected activity and the conduct of which she complains and, even if she did, she fails to create a triable issue on whether the proffered reasons were pretext for a retaliatory motive.

Plaintiff fails to offer any direct evidence of retaliatory causation.  However, a "causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'"  Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)); accord McRae v. Dep't of Corr. & Rehab., 142 Cal. App. 4th 377, 388 (2006) ("A plaintiff can satisfy his or her initial burden under the test by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.").

The only evidence offered to show Plack's knowledge of Plaintiff's protected activity is a letter her counsel sent to him on August 1, 2008.  The letter, which concerned Plack's intent to reprimand Plaintiff for the Hollister event, referred to her charges filed with the EEOC and the DFEH.  <u>See</u> Barber Decl., Ex. 19 at 301.  However, Plaintiff does not proffer evidence that he knew of this protected activity before he received the letter.  Without such knowledge, Plack cannot be held liable for retaliating against her by removing her from the training course, failing to provide her with adequate equipment, writing her up for the Hollister event or refusing to assign her as an FTO; these actions either occurred or were set into motion before August 1.  The only action initiated thereafter was Plack's expansion of recruiting for the 2009 sergeant position, which took place in or around March, 2009.  This occurred almost eight months after the August 1 letter was sent, which negates any causal inference based on temporal proximity.  Consequently, Plaintiff fails to make out a <u>prima facie</u> case that Plack retaliated against her.

At the hearing on this motion, Plaintiff's counsel conceded the record contains no evidence that Capon knew of Plaintiff's protected activity.  Thus, she cannot maintain her retaliation claims against Capon either.

Accordingly, the Court grants summary judgment in favor of Defendants on all of Plaintiff's claims for retaliation.

IV.  City's Liability under § 1983

Plaintiff seeks to hold the City liable under § 1983 for Plack's conduct, on the theory that the police department has a custom or practice of sex discrimination.

**United States District Court**
For the Northern District of California

1   A municipality may be liable under § 1983 when the enforcement

2   of a municipal policy or custom was the moving force behind the

3   violation of a constitutionally protected right.  <u>Monell v. Dep't</u>

4   <u>of Social Svcs.</u>, 436 U.S. 658, 663-64 (1978).  "To hold a local

5   government liable for an official's conduct, a plaintiff must first

6   establish that the official (1) had final policymaking authority

7   'concerning the action alleged to have caused the particular

8   constitutional or statutory violation at issue' and (2) was the

9   policymaker for the local governing body for the purposes of the

10  particular act."  <u>Weiner v. San Diego County</u>, 210 F.3d 1025, 1028

11  (9th Cir. 2000) (quoting <u>McMillan v. Monroe County Ala.</u>, 520 U.S.

12  781, 785 (1997)).

13      Under California law, Plack has final policymaking authority

14  over the Crescent City Police Department.  <u>See</u> Cal. Gov. Code

15  § 38630(a) ("The police department of a city is under the control

16  of the chief of police."); <u>Collins v. City of San Diego</u>, 841 F.2d

17  337, 341 (9th Cir. 1988).  In response, Defendants proffer the

18  declaration of the City's city manager, who asserts that "Plack is

19  not a policymaker for the City" and that the "City Council is

20  responsible for setting City policy."  Butler Decl. ¶ 2.  Although

21  these statements may be true, they do not address Plack's

22  policymaking authority over the police department and, more

23  importantly, over the particular acts taken against Plaintiff.

24      Accordingly, Plaintiff may hold the City liable under § 1983

25  for Plack's conduct.

26  V.   Qualified Immunity

27      Plack maintains that the doctrine of qualified immunity

28  shields him from liability for Plaintiff's § 1983 claims.  The

27

defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set out a two-step analysis to determine whether qualified immunity shields an official from liability. Under Saucier, the threshold question was whether, if all factual disputes were resolved in favor of the party asserting the injury, the evidence would show the defendant's conduct violated a constitutional right. Id. at 201. If a violation could be made out on the allegations, the next step was to ask whether the constitutional right at issue was clearly established. Id.

As explained above, the evidence could support a finding that Plack violated Plaintiff's constitutional right to equal protection. Further, it has been long established that Plaintiff has a constitutional right to be free of sex-based discrimination in her employment. See Lowe v. City of Monrovia, 775 F.2d 998, 1011 (9th Cir. 1985). Accordingly, qualified immunity does not shield Plack from Plaintiff's § 1983 claims.

VI.  Evidentiary Objections

To the extent that the Court relied upon evidence to which Defendants object, those objections are overruled. Defendants object on hearsay grounds to testimony by Plaintiff's witnesses concerning Plack's statements. Because Plack's statements were described by witnesses with personal knowledge, they are admissible as party-opponent admissions. Fed. R. Evid. 801(d)(2)(A).

Defendants also object to Plaintiff's reliance on the Crescent City Police Department Annual Report for 2007 on the basis that it is inadmissible hearsay and that, under Federal Rule of Evidence 1002, she must proffer the original report.  However, as a publication of the City, the report constitutes a party-opponent admission. Further, Plaintiff need not submit the original report because it is in the possession of and offered against the City.  Fed. R. Evid. 1004(3).

To the extent the Court did not rely on evidence to which the parties objected, the objections are overruled as moot.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  (Docket No. 50.) Summary judgment is granted against Plaintiff on all of her claims against Capon and her Title VII and FEHA discrimination and harassment claims against the City, to the extent that they rest on his conduct.  Summary judgment is also granted against Plaintiff on all of her claims for retaliation.  In all other respects, Defendants' motion is denied.

Plaintiff's remaining claims are: (1) a Title VII claim against the City for "sexual discrimination, harassment and hostile environment;" (2) a claim under the FEHA against the City for sexual discrimination and harassment; and (3) a claim under 42 U.S.C. § 1983 against the City and Plack for violating her right to equal protection by discriminating against her and harassing her on the basis of her sex.

The Court refers the parties to a magistrate judge for settlement purposes.  A final pretrial conference is scheduled for

October 12, 2010 at 2:00 p.m.   A five-day trial is scheduled to

begin on October 25, 2010 at 8:30 a.m.

      IT IS SO ORDERED.

Dated: July 23, 2010

                                   CLAUDIA WILKEN
                                   United States District Judge

**United States District Court**
For the Northern District of California